RICHARD MINOCHIAN, GEORGE JOHNSON, JOHN AETINIA AND BILLY EFFSA ET AL., PROSECUTORS, v. CITY OF PATERSON ET AL., DEFENDANTS.

Submitted January 27, 1928—Decided November 30, 1928.

Before Justices TRENCHARD, KALISCH and KATZENBACH.

For the prosecutors, *Edward F. Merrey.*

For the defendants, *Benjamin J. Spitz.*

The opinion of the court was delivered by

KALISCH, J. The prosecutors were convicted in the recorder's court of the city of Paterson, upon the following complaints: "Before me, John F. Evans, recorder of the city of Paterson, personally appeared Sergeant Gus VanDerBok, police department of North Paterson, New Jersey, who being duly sworn according to law deposeth and saith that on the 19th day of April, 1926, Richard Minochian, George Johnson, John Aetinia, Billy Effsa, Peter Georger, Louis Agan, Paul Bazir, Jake Vanorin, Thomas Gassis, John Ali, Edward Scheriniar, in the city of Paterson, county of Passaic aforesaid, did violate a provision of the ordinance of the mayor and aldermen of the city of Paterson, entitled 'An ordinance to prohibit gaming and the keeping of gaming houses in the city of Paterson, and to provide for the punishment thereof,' passed August 18th, 1899, and approved the same day, and the amendments thereof, in that said defendants were present in the house, room or apartment that John Caracaras, of the city of Paterson, did keep or maintain at, to wit, 40 Van Houten street, Paterson, New Jersey, a room within said city wherein betting, chances or gaming upon the happening of an event, to wit, dice and card gaming, was carried on or

allowed for money or valuables, in violation of section one of the said ordinance as above set forth."

(Signed) SERGT. G. VANDERBOK,<br>
*Complainant.*

Sworn at Paterson this 20th day of April, 1926,

JOHN F. GROSSI,<br>
*Clerk to Recorder.*

The complaint is very inartificially drawn, but that circumstance of itself does not render the complaint invalid, so long as it apprises the accused of the nature of the charge brought against him.

Section one, of the amended ordinance, reads as follows: "That no person or persons shall keep or maintain, or be present in any house, room or apartment, within this city, wherein betting, pool selling or chances or gaming of any kind, upon the event of any horse race or races between horses, or upon the happening of any event carried on or allowed, nor shall any person or persons keep any house, room or apartment or be present therein, wherein gaming for money or valuables is allowed or carried on in this city; provided, that where a person is innocently present without any interest in the gaming, and this is proved to the satisfaction of the recorder, he shall be acquitted."

The recorder having found the prosecutors guilty *inter alia,* adjudges "and it not appearing to the court from the testimony, that the prosecutors were not innocently present without any interest in the gaming, were senterced to pay a fine of five dollars each."

The record of the recorder's court further shows that the fines were paid under protest.

The prosecutors, under the statute of 1908, page 442, applied to the president judge of the Court of Common Pleas to have the legality of their several convictions reviewed, and that tribunal ordered that the complaint, warrant, proceedings of record of conviction had in the recorder's court to be brought before him so that the legality of the proceedings and conviction there had may be reviewed and determined by him, and according to the record of the Court of Common Pleas,

it appears that after the hearing, and a postponement of the decision of the court, the following minute was entered upon the record: "This case having been continued until this time, the judgment of the recorder's court of the city of Paterson is upheld."

The prosecutors then sued out of the Supreme Court a writ of *certiorari* directed to the Court of Common Pleas at Passaic county, and in obedience to the writ, the Common Pleas Court has sent to this court, under its hand and seal, all the proceedings and the order made by it in the cause, and from which it appears, as above stated, that the court's order was, that "the judgment of the recorder's court of the city of Paterson is upheld."

We have reached the conclusion that the writs should be dismissed for reasons we will now proceed to state.

The statute of 1908, *supra,* which is invoked by the prosecutors as warranting the removal of the record of their conviction in the recorder's court to the Court of Common Pleas is entitled "A supplement to an act entitled 'An act relating to courts having criminal jurisdiction and regulating proceedings in criminal cases' (Revision of 1898), approved June 14th, 1898." The statute, in substance, provides that upon application made to a justice of the Supreme Court holding the Circuit in each of the counties of this state, or the president judge of the Court of Common Pleas for said county for any person who has been convicted in any summary conviction had before any police judge, justice of the peace, mayor, recorder or other magistrate in any city, town, township or borough for the violation of any ordinance at any such city, town, township or borough, who desires to have the legality of the conviction reviewed, such justice of the Supreme Court or president judge of the Court of Common Pleas, shall order the complaint, warrant, proceedings and record of conviction to be forthwith brought before him, that the legality of such proceedings and conviction may be reviewed and determined, and if such proceedings and conviction shall thereupon be found to be illegal, forthwith set aside the same and order the discharge of the person so convicted from custody.

The language of the statute is too clear and explicit to need any argument to demonstrate that the employment of the words in the statute, "to order the discharge of the person so convicted from custody," that the benefit of the statute was only to be extended to a person who was convicted in a summary proceeding, and who was in actual custody. The fact in the instant case is that none of the prosecutors was in custody, and therefore none was entitled to a review of his conviction, by virtue of this statute. Each of the prosecutors paid his fine, and though he paid it under protest, that circumstance did not have the effect of being tantamount to a situation of a person being in actual custody.

Before proceeding any further to discuss the intent and scope of the statute, we find it convenient here to first consider the problem which obtrudes itself upon the surface of this legislative act, and that is, as to whether or not the procedural remedy provided for by the statute, in substance, invests a judge of the Common Pleas with the jurisdictional power to grant a writ of *certiorari* in the cases designated by the statute. We are mindful that the jurisdictional question has not been raised or argued in the brief of counsel of prosecutors, nevertheless, since the facts themselves present the question, and since counsel are not precluded from raising it in the event of an appeal being taken, even though the jurisdictional question was not raised and passed upon by this court, we deem it of sufficient importance to express our views in regard to the nature and scope of the statute and of the remedy provided.

In *Green* v. *Heritage,* 64 *N. J. L.* 567, which case dealt with a provision of the District Court act of 1898 (*Pamph. L.* 1898, § 206), providing for an appeal to the Circuit Court, in these words: "If either party in any such action or proceeding shall be dissatisfied with the determination or direction of said court in any point of law, or upon the admission or rejection of evidence, such party may appeal from the same to the Circuit Court of the county wherein said District Court is held." Mr. Justice Van Syckle, speaking for the Court of Errors and Appeals (at *p.* 568), says: "There can

be no question that although the proceedings by which the judgment of the District Court was removed into the Circuit Court is styled in the District Court act of 1898, an appeal, the power conferred is identical with that which was exercised by the Supreme Court through its prerogative writ of *certiorari*. The power granted is the *certiorari* power, and must be dealt with as such. *McCullough* v. *Essex Circuit Court,* 30 *Vr.* 103."

"The question now presented was most ably and elaborately discussed by the late Chief Justice Beasley as long ago as 1865, in *Dufford* v. *Decue,* 2 *Vr.* 302, and the conclusion reached has never been challenged and I am confident cannot be successfully controverted."

"After showing that prior to the adoption of the constitution of 1844 our Supreme Court was empowered to have cognizance of pleas, civil, criminal and mixed, as fully and amply to all intent and purpose whatsoever as the courts of Queen's Bench, Common Pleas and Exchequer within Her Majesty's Kingdom of England," he says: "That at the time of the formation of the constitution of 1844 the ordinary common law original jurisdiction of the Supreme Court was shared by the respective county Circuit Courts and to a definite extent by the Court of Common Pleas; but the appellate and extraordinary jurisdiction with which the Supreme Court, as the successor of the King's Bench, had been originally vested, remained centered still exclusively in that tribunal, with the single anomaly that the act constituting the Circuit Court had conferred upon them the power to review suits originating in the justice's courts by the instrumentality of the writ of *certiorari*."

"After declaring that no change in this respect was effected by the constitution of 1844, he further says: 'It was never supposed that either the Common Pleas or the county Circuits were possessed of any more than a concurrent common law jurisdiction with the Supreme Court within the limits of their respective counties in the ordinary line of actions *inter partes*. It is certain that no greater power than this was ever claimed for them. In a defined measure they

each shared, practically, with the Supreme Court, a portion of its ordinary jurisdiction, and this was all, for, so far as is known, no attempt was ever made to bring before either of those tribunals any matter which was not embraced within the limit of this power. Indeed, the express authorization of the Circuit Court to use in an enumerated class of cases the writ of *certiorari* [that is, *certiorari* to justices' court], excludes in a very conclusive manner all claim to the exercise of analogous prerogatives, and likewise evinces that the several terms conferring authority upon those courts did not impart to them anything more than a portion of what I have called the ordinary jurisdiction of the Supreme Court. I think, therefore, it is clear that at the time the new constitution was framed these general terms so often used in conferring on the local courts a partial jurisdiction, co-extensive with that of the Supreme Court, had acquired a definite and settled meaning, and that such meaning was that the inferior courts should have a concurrent cognizance over actions arising within the county in the usual course of law between parties. And in this sense, in my opinion, were the words used in the constitution of this state, and this construction seems to me much fortified when we remember that the distinction between the ordinary and prerogative jurisdiction of the Supreme Court has always been clearly and sharply defined. In England, the ordinary jurisdiction of the King's Bench was shared in a large measure with the Common Pleas, and in a lesser degree with some of the other courts. But the authority which was exercised by means of the various writs of *mandamus, quo warranto, certiorari,* and others of a similar character belong to this high tribunal alone.' " * * *

"All these great powers were, by the ordinance of our first provincial governor, transferred to the Supreme Court, and were exclusively exercised by that tribunal from that time to the era of the new constitution; and it was these extraordinary powers which belong to it as a Supreme Court, which were not, as I think, intended to be granted to the Circuit Court by that instrument. * * * Besides, it is obvious that the same course of reasoning which will clothe the county

courts with jurisdiction in the class of cases above referred to, will also clothe them with appellate jurisdiction by writ of error to the Common Pleas, for if concurrent jurisdiction with the Supreme Court implies, and is equivalent to co-ordinate and co-extensive jurisdiction, these Circuit Courts cannot consistently be denied a power of review."

And at page 571, Mr. Justice Van Syckel, further quoting, says: "In the language of Chief Justice Beasley, this appellate and extraordinary jurisdiction, exercised by the writ of *certiorari*, centers exclusively in the Supreme Court, and it cannot be taken away or impaired by adverse legislation."

In *Flanagan* v. *Plainfield*, 44 *N. J. L.* 118, Mr. Justice Van Syckel, speaking for the Supreme Court (at *p.* 123) says: "If by statute the right to the writ of *certiorari* in these cases can be bestowed upon the Circuit Court, no constitutional barrier opposes the right of the lawmaker to arm them with writs of *mandamus* and *quo warranto.*"

"The distinguishing feature of the King's Bench was the authority which it alone exercised by means of the writs of *certiorari*, *mandamus* and *quo warranto.*"

"That our constitution was framed to perpetuate in our Supreme Court the same ample and exclusive power, is clearly shown by the opinion of the Chief Justice in *State, Dufford, Pros.,* v. *Decue*, 2 *Vr.* 302."

"The Supreme Court is the sole depositary of these prerogative writs."

"The single exception to the rule is mentioned by the Chief Justice, viz., suits originating in justices' courts. The reason for the exception is that at the time of the formation of the constitution of 1844, the act constituting the Circuit Courts had conferred upon them the power to review by *certiorari* suits originating in justices courts."

"The constitution makes this court unassailable by legislation."

The reason for the existence of the exception referred to by the learned justice is to be found in the constitution of 1844, article 10, section 1, *inter alia*, declares: "The several courts of law and equity, except as herein otherwise provided,

shall continue with the like power and jurisdiction as if this constitution had not been adopted."

It thus appearing that the jurisdiction and power of the Circuit Courts to grant writs of *certiorari* in actions originating in justices' courts having been conferred upon said Circuit Court, by the lawmaking power of this state, before the adoption of the constitution of 1844, and which jurisdiction and power of the Circuit Courts were continued by the constitutional provisions quoted, gave rise to the exception, characterized by Chief Justice Beasley, in *Dufford* v. *Decue, supra,* as an anomaly by which the Supreme Court is passed by, since by force of a constitutional provision the final judgment of a Circuit Court may be directly taken to the Court of Errors and Appeals.

But no such jurisdiction or power was ever confided to the Court of Common Pleas, and, therefore, the fact that a judgment of the Court of Common Pleas must be reviewed by the Supreme Court, has no material significance.

This is clearly demonstrated by Mr. Justice Van Syckel in *Green* v. *Heritage, supra* (at *p.* 571), where the learned justice, in commenting upon the view taken by the Supreme Court, in *Reily* v. *Second District Court of Newark,* 63 *N. J. L.* 541, says: "The suggestion made" in that case, "in support of the legislation" before it under review, "that the suits may be brought in the District Court, are such as might be instituted in the Circuit Court, and if there instituted, the Supreme Court could not review the decision of that tribunal by *certiorari;* nor at all, if the litigant chose to carry his grievance directly to the Court of Errors and Appeals. This shows that the Supreme Court has no exclusive jurisdiction over the questions involved."

"The obvious fallacy of this reasoning is that it fails wholly to distinguish between ordinary and appellate jurisdiction."

"The distinction is so sharply drawn in Dufford *v.* Decue that it is unnecessary to amplify argument upon this point."

"When a suit is instituted in the District Court the right of the Supreme Court attaches through its appellate and ex-

traordinary jurisdiction, to supervise the proceedings of the inferior court."

Germane to this pronouncement are the remarks of Chief Justice Ewing, in *Martin* v. *Thompson,* 10 *N. J. L.* 142, decided in 1828, relating to the jurisdiction of the Court of Common Pleas in cases of appeal, by virtue of the statute of 1820, in the course of which, in construing that statute (at *p.* 143), the learned jurist says: "But it is erroneous to suppose that jurisdiction of this court [Supreme Court] on *certiorari* was thereby transferred to the Court of Common Pleas, or that the same grounds of reversal were to be applied and to prevail in the one court as in the other, or that relief was to be given in the same way in the Court of Common Pleas as had formerly been done in this court. When relief was provided in matters of law and fact, it was such relief as accords with the nature of another trial, not such as belongs peculiarly to a writ of error." * * * "It is clear then, that in the present case it is not regular for the Court of Common Pleas merely to inspect the transcript returned to them by the justice, and to reverse or set aside the proceedings, because, on *certiorari,* the supreme court has done the like."

The statute of 1908 has been held to be constitutional in *Newark* v. *Kazinski,* 86 *N. J. L.* 59.

The views expressed by Mr. Justice Trenchard, speaking for the Supreme Court, holding the act to be constitutional, were the bases of the judgment to a like effect, in *City of Paterson* v. *Cohen,* which latter case was affirmed by the Court of Errors and Appeals in 88 *N. J. L.* 369. The constitutionality of the act of 1908, therefore, is no longer open for debate.

It is quite clear from a plain reading of the statute of 1908, and the procedure which follows the order for review, as provided by said act, that the order and procedure thereunder are conspicuously unlike the function of a writ of *certiorari* and the procedure which follows the writ.

It is to be observed that the title of the statute of 1908 is "A supplement to an act relating to courts having criminal jurisdiction and regulating proceedings in criminal cases."

It would have been more logical if the title were a supplement to the *Habeas Corpus* act. It has been repeatedly decided by our courts that the procedure for the violation of a city ordinance providing for the payment of a fine, and in default of payment, imprisonment, is of a purely civil nature, or at most, of a *quasi*-criminal or *quasi*-civil character.

The history of the situation which led to the enactment of the statute of 1908 seems to have been entirely overlooked. Its origin finds some explanation in *Pamph. L.* 1908, *ch.* 229, *p.* 443. This legislative act was enacted at the same time as was the statute under consideration, and seems to be corollary to chapter 228. The companion statute provides for the release of persons under confinement in county jails in default of paying fines for violation of any ordinance, &c. It becomes therefore quite obvious that the legislative intent was to provide a remedy by a method of review whereby a person wrongfully detained in custody could have speedy relief. Such relief was not always attainable by either a writ of *certiorari* or writ of *habeas corpus.*

In a *certiorari* proceeding, where a penalty has been imposed, the prosecutor is required to give a bond, and if unable to furnish one must languish in custody until his case is argued and decided, and the decision prove favorable to him.

In a *habeas corpus* proceeding unless the irregularity appeared upon the face of the complaint, or of the commitment, no relief could be granted.

To remedy this situation the legislature, in 1885, passed an act entitled "A supplement to an act entitled 'An act for preventing the injury of illegal confinement and better securing the liberty of the people' [Revision], approved March, 1874." *Pamph. L.* 1885, *p.* 286. This legislation conferred upon the president judge of the Common Pleas Court concurrent jurisdiction with the justices of the Supreme Court to grant a writ of *habeas corpus* in all criminal cases, where any person may be confined in prison or detained in custody, and to hear and determine the same, in the same manner as though the application had been made before a justice of the Supreme Court.

The second paragraph of section 2 of the *Habeas Corpus* act (2 *Comp. Stat., p.* 2640), in terms, expressly provides that a person committed or detained by virtue of the final judgment or decree of any competent tribunal of criminal or civil jurisdiction, or by virtue of any execution issued upon such judgment or decree, unless such judgment or decree be founded on contract, shall not be entitled to prosecute a writ of *habeas corpus.*

It becomes, therefore, manifest that chapter 228 of the laws of 1908, *supra,* was enacted in aid of the *Habeas Corpus* act, so as to broaden the right of review of proceedings, after a final judgment had been rendered by a competent tribunal, and by or through which judgment a person is being unlawfully detained in custody.

Under the statute of 1908, the judge is not limited to a review of the sufficiency of a complaint, or to the regularity of the commitment, but he is fully empowered to review the entire proceedings had in a court below, and to determine the legality of the conviction, and if he finds the conviction to be illegal, to discharge the person from custody.

The writ of *habeas corpus* is not a prerogative writ.

There is no constitutional inhibition of the legislative power to authorize the allowance of such a writ by a judge of the Court of Common Pleas.

The statute under which the present proceedings were instituted, as has already been pointed out, applied only to a situation where a person is in actual custody, and not otherwise.

This apparently is not the case here. None of the persons, whose cases were reviewed under the order, was in custody, and each had paid his fine.

The writs are dismissed, with costs.