SPECIAL STATUTORY TRIBUNAL.

## STATE OF NEW JERSEY, COMPLAINANT, v. GORDON SPENCER, DEFENDANT.

Decided December 1, 1942.

For the complainant, *James A. Breslin,* Assistant Prosecutor of the Pleas.

For the defendant, *Herbert F. Myers, Jr.*

DELMAR, C. P. J. The defendant was tried and convicted in the First Criminal Judicial District Court of the County of Bergen on a complaint alleging that he did, "Cruelly abuse and needlessly kill one alley cat by beating it with a stick."

The complaint charges that the defendant committed a misdemeanor and alleges facts which if true would constitute a violation of *R. S.* 4:22-17; *N. J. S. A.* 4:22-17. He waived

indictment and trial by jury, pled not guilty and was tried
and convicted by the judge of the aforesaid court. The
defendant has taken the steps required by statute to have
the conviction and the proceedings leading to it reviewed
by me sitting as a statutory tribunal. There were returned
to me copies of the complaint, warrant, commitment and
record of conviction, together with a state of the case certified
by the judge of the lower court.

Twenty reasons were advanced why the conviction should
be reversed, only two of which need to be noticed: First,
that the lower court erred in denying defendant's motion
to "dismiss the complaint" at the end of the state's case.
Second, that there was no evidence justifying defendant's
conviction.

No objection was made to the procedure adopted, and at
the hearing the so-called state of the case was considered by
both sides as a part of the record returned to me, neverthe-
less, because the matter appears not to have had judicial
consideration, I consider it advisable to offer some comments
on what the procedure should be and the nature of the
review or appeal.

My jurisdiction over the review is set forth in *R. S.*
2:214-14, *et seq.; N. J. S. A.* 2:214-14, *et seq.* Section 14
provides that the "Judge of the Court of Quarter Sessions
\* \* \* may order the complaint and warrant, commitment
and record of conviction to be brought forthwith before him
for review."

It also provides, if the conviction is for a criminal offense,
that due notice shall be given to the prosecutor of the pleas.
Section 15 provides:

"If an appeal shall be taken from, or an order of review
or a writ of *certiorari* allowed upon, a judgment in a cause
tried in a criminal judicial district court, a transcript of the
proceedings and testimony made by the stenographer desig-
nated pursuant to Section 2:212-18 shall be certified by the
judge as the state of the case, to be used on the hearing of the
appeal, review or *certiorari.*"

Section 16 provides:

"If, upon a review of a conviction in a criminal judicial

district court under authority of Section 2:214-14 of this title, the complaint, warrant, commitment and conviction shall be found to be illegal, the same shall be forthwith set aside, and the person so convicted shall either be discharged from custody or remanded for a new trial in such criminal judicial district court."

In my judgment the foregoing provisions are ambiguous. Sections 14 and 16 taken together would indicate that my authority was limited to a strict review of the legality of the complaint, warrant, commitment and conviction. Section 15 indicates that where a stenographer is used in the court below, a stenographic transcript shall be returned as a part of the state of the case and that the review is in the nature of an appeal. No provision is made for a return of a transcript or certification of the testimony where no stenographer is appointed.

At common law it was the practice of magistrates to keep a docket in which was set forth the names of the witnesses and a summary of the testimony given by each. The record returned in this case includes such a summary of the testimony, and in the absence of any objection I have considered it as part of the state of the case.

Criminal judicial district courts, organized under the statute, are courts of record; *R. S.* 2:212-5; *N. J. S. A.* 2:212-5, and the judges thereof have the power to make such rules and regulations as shall be necessary for the orderly conduct of the business and proceedings of his court; *R. S.* 2:214-1; *N. J. S. A.* 2:214-1. So far as I have been able to learn, no such rules and regulations have ever been adopted, nor has the Court of Quarter Sessions of this county, nor any judge thereof, ever made any rules or regulations governing reviews or appeals from such courts.

The Criminal Judicial District Courts have concurrent jurisdiction with the Courts of Quarter Sessions and Special Sessions to try all misdemeanors, other than high misdemeanors, where such misdemeanors are committed within the limit of the judicial district in which such criminal court is established, and the person or persons charged with any such offense shall in writing waive indictment and trial by

jury; see *R. S.* 2:213-2; *N. J. S. A.* 2:213-2. A trial such as therein provided for is akin to a trial by the judge of the Court of Special Sessions. If the case at bar had been tried before a judge of the Court of Special Sessions, the defendant, upon conviction, would by virtue of *R. S.* 2:195-16; *N. J. S. A.* 2:195-16, have the right to the benefit of a review of the entire record of the proceedings, in addition to the procedure provided for by a strict writ of error. This latter statute was in effect at the time of the passage of the original act under which the Criminal Judicial District Courts were organized.

It is quite evident that one of the purposes in creating Criminal Judicial District Courts was to lift from the judges of the Court of Special Sessions some of the burden of disposing of cases in those courts. It would be anomalous if, in two courts having concurrent jurisdiction, the defendant in Special Sessions should have the benefit, if he so desires, of a review of the entire record and that he should not have the same benefit if the case was tried in a Criminal Judicial District Court. An interpretation of the various acts hereinbefore referred to which would bring about that result should not be given unless it is clear that the legislature so intended. The very paucity of description of the review in the Criminal Judicial District Court Act suggests that the legislature had in mind that the review by a judge of the Court of Quarter Sessions was but a step in the procedure outlined by the Criminal Procedure Act. Furthermore, *R. S.* 2:214-15; *N. J. S. A.* 2:214-15, indicates that it was the legislative intention to have a review of the evidence and a statute somewhat similar in phraseology was so construed in *Minochian* v. *Paterson,* 105 *N. J. L.* 73; 143 *Atl. Rep.* 825, reversed on other grounds, 106 *N. J. L.* 436; 149 *Atl. Rep.* 61. It is, therefore, my opinion, in the absence of the authority of a decision from any higher court, that this review should open up the entire record for the consideration of this court.

There was one other matter of procedure that I think calls for some comment. The papers returned to this court consist of a lot of loose, unconnected documents. It is my

opinion that orderly procedure requires that the return made to this court consist of a single document, certified by the judge of the Criminal Judicial District Court to be the entire record of the case.

We come now to a consideration of the reasons argued in this court for a reversal. The so-called state of the case shows that at the end of the state's case the defendant moved for a dismissal of the complaint on nine separate counts. The complaint alleges that the defendant, "Did cruelly abuse and needlessly kill one alley cat by beating it with a stick." It is not necessary to specify or refer to any of the nine counts hereinbefore referred to, except No. 9, to wit, "That no evidence has been advanced by the state that the cat had been cruelly abused or needlessly killed as charged in the complaint." The defendant's motion was denied and an exception was allowed. I have treated this motion to dismiss the complaint as equivalent to a motion for a directed verdict because it is evident that such a motion was intended. A motion to dismiss a complaint is equivalent to a motion to quash and only raises the question as to the sufficiency of the complaint itself; 22 *C. J. S.*, § 313, and cases cited; whereas, a perusal of the reasons given to the court indicates that a motion to direct a verdict of acquittal was intended. Whether such a verdict should be directed in favor of the defendant at the close of the state's case is a matter resting in the discretion of the trial court; *State* v. *Jaggers,* 71 *N. J. L.* 281; 58 *Atl. Rep.* 1014. An exception to the court's refusal to so direct was formerly considered waived if the defendant afterward proceeded to his defense. However, when the entire case is taken up under *R. S.* 2:195-16; *N. J. S. A.* 2:195-16, a court of review is required to consider, among other things, whether the defendant has suffered manifest wrong or injury in the denial of any matter by the trial court which was a matter of discretion. This provision applies to a refusal to direct a verdict at the close of the state's case, but it brings into review only the question whether upon the evidence as it stands when the motion was made there was a case for the jury; *State* v. *Jaggers, supra,* and *State* v. *Lieberman,* 80 *N. J. L.* 506; 79 *Atl.*

*Rep.* 331; and the right to a review of such ruling is not waived because the defendant afterward proceeded to his defense; *State* v. *Bacheller,* 89 *N. J. L.* 433; 98 *Atl. Rep.* 829. This is true even though such motion was not renewed at the conclusion of the whole case; *State* v. *Bacheller, supra,* and *State* v. *Contarino,* 92 *N. J. L.* 381; 105 *Atl. Rep.* 197. The question to be determined is whether when the motion was made there was a question of fact to be decided by the jury, or by the judge where jury trial is waived; *State* v. *Cohen,* 97 *N. J. L.* 5; 116 *Atl. Rep.* 724. See, also, for a review of the law, *State* v. *Keegan,* 105 *N. J. L.* 159; 143 *Atl. Rep.* 768.

In the case at bar none of the state's witnesses offered any testimony to indicate that the defendant either cruelly abused or needlessly killed a cat, nor that he beat it with a stick. The motion for a dismissal of the complaint should have been granted. However, the defendant proceeded with his defense and offered testimony to the effect that a Mr. Kelly sought the help of the defendant's father, who was a fish and game commissioner, in trapping a skunk which was under a building used by Mr. Kelly as a theatre and was, "smelling up the property;" that his father being away, he set traps to catch the skunk. Several days later he returned with a companion and found one of the traps was sprung by a cat which had caught its front paw in one of the traps; that in endeavoring to release the cat, the cat scratched him and bit him in eight different places on his hands, finally seizing his first finger and thumb and holding on with clamped jaws; that he endeavored to release the cat but the cat kept scratching him, causing intense pain. Finally, in order to release his hand from the cat's mouth and to escape further attacks, he hit the cat one blow on the back of its head, killing it. The defendant's testimony was corroborated both by Mr. Kelly and by his companion, Charles Clark.

It is a matter of common knowledge that a cat is never completely domesticated and will use its claws and teeth to protect itself whenever it is annoyed or believes itself to be threatened. The defendant was attempting to perform a humane act, to wit, to release the cat from the trap. The

cat, evidently considering the defendant to be an enemy rather than a friend, clawed and bit him severely. The uncontradicted evidence is that the cat finally seized one of the defendant's hands in his teeth and held fast. There was apparently no way to release the hold except by killing the cat. This was done, according to the uncontradicted testimony, by one single blow with the stick, killing the cat instantly.

The complaint in question is framed under *R. S.* 4:22-17; *N. J. S. A.* 4:22-17, which provides in part that any person who shall unnecessarily or cruelly beat or otherwise abuse, or needlessly mutilate or kill, a living animal or creature shall be guilty of a misdemeanor. The complaint charges both cruelly abusing and needlessly killing. No objection was made as to its form. There is no evidence at all of any cruel abuse. If a person is unwarrantedly attacked by another person he has the right to use whatever force is necessary in order to repel the attack, even to take the life of the assailant, if that should be necessary. To adopt a different rule with relation to animals would create an absurdity. Since the defendant in this case was unable to release the hold of the cat on his hand without striking it, he was fully justified in so doing, even though the result be that the cat lost its life. It cannot be said that the killing was needless.

I am satisfied, therefore, upon a review of the entire case, that there was no evidence to justify the defendant's conviction and the same is hereby reversed. This view of the case makes it unnecessary for me to consider the other points urged for reversal.