THE STATE, DEFENDANT IN ERROR, v. GEORGE T. BACHELLER, PLAINTIFF IN ERROR.

Argued June 7, 1916—Decided October 14, 1916.

The refusal of a motion to direct a verdict of acquittal at the close of the case for the state, where the case fails to show the defendant's guilt, is an error reviewable under sections 136 and 137 of our Criminal Procedure act, and the right to the review is not waived by the defendant because he thereafter proceeds with his defence.

On error to the Camden Court of Quarter Sessions.

Before Justices GARRISON, PARKER and BERGEN.

For the plaintiff in error, *Wilson & Carr* and *Robert H. McCarter*.

For the defendant in error, *William J. Kraft*.

The opinion of the court was delivered by

BERGEN, J. The defendant was convicted in the Camden County Court of Quarter Sessions of the crime of forgery. The record has been brought here by a writ of error, and also contains the proceedings had at the trial as permitted by sections 136 and 137 of the Criminal Procedure statute, and the principal ground urged for reversal is the refusal of the trial court to direct an acquittal at the close of the case for the state.

If this action resulted in a manifest wrong or injury to the defendant he is entitled to a reversal. *State* v. *Jaggers,* 71 *N. J. L.* 281; *State* v. *Lieberman,* 80 *Id.* 506. It is urged by the state that even if this judicial action was erroneous the defendant waived his benefit by proceeding with his defence, during which, it is claimed, the defendant by his testimony supplied the deficiencies, if any, in the state's case.

In the case of *Burnett* v. *State,* 62 *N. J. L.* 510, Mr. Justice Collins, speaking for the Supreme Court, expressed his opinion, not necessary to the decision of the case, for it was disposed of on another ground, that although the defendant was entitled to a ruling at the close of the state's case, he waived an exception to its denial by proceeding with his defence, but our Court of Errors and Appeals did not consider such a course a waiver in *State* v. *Jaggers, supra,* where defendant's exception to a refusal to direct an acquittal at the close of the case for the state was considered and determined, although after such refusal the defendant proceeded with his defence, and the same course was followed in this court in *State* v. *Lieberman, supra.*

In the Jaggers case Chancellor Magie, speaking for the Court of Errors and Appeals, after declaring that the court was required, under section 136 of the Criminal Procedure act, to consider whether the plaintiff in error has suffered manifest wrong or injury in the denial of any matter by the trial court, which was a matter of discretion, said: "The provision for review of a denial of a motion to discharge or to direct a verdict of not guilty, which is addressed to the discretion of the court, brings into review only the question whether, *upon the evidence as it stood when the motion was made,* there was a case for the jury."

It cannot be assumed that so learned a jurist overlooked the fact that after the denial of the motion the defendant proceeded with his case, or, that, if this latter circumstance amounted to a waiver of the defendant's rights, it would not have been so adjudged, and the review would not have been limited to the question whether, upon the evidence as it stood when the motion was made, the defendant was entitled to the benefit of his exception. In the Lieberman case, Chief Justice Gummere, speaking for this court, said: "Under the provision of section 136 of the Criminal Procedure act a court of review is required to consider, among other things, whether the defendant has suffered manifest wrong or injury in the denial of any matter by the trial court, which was a matter of discretion. This provision applies to a refusal to direct a verdict at the close of the state's case, but it brings into review only the question whether, upon the evidence as it stood when the motion was made, there was a case for the jury."

In neither of these cases was the testimony of the defendant considered, and from them it appears that in cases governed by the sections of our Criminal Procedure act above mentioned, a defendant is entitled to the benefit of a review of an erroneous refusal to direct a verdict of acquittal at the close of the state's case, and that an exception to such ruling is not waived by the defendant because he proceeds with his defence. This is a just rule, for the policy of the law is against compelling a person charged with a crime to prove his innocence until the state has made a case from which guilt

may be inferred. There is no such thing as a nonsuit in a criminal case, and, at the close of the state's case, there must be evidence from which an inference of guilt may be drawn or the defendant is entitled to an acquittal, as a matter of law, and that legal right will not be presumed to be waived because he proceeds with his defence.

The practice that obtains in civil trials of considering defendant's testimony upon review of the denial of his motion to nonsuit affords no criterion as to criminal trials, for its history and theory are entirely different. In civil trials the practice of compulsory nonsuits, not being derived from the common law, was *sui generis* in this state, and in the early days the rule adopted was that such a motion, although made at the close of the plaintiff's case, would not be decided until the defendant had rested his case.

This practice became so unpopular with the bar that it led to the compromise rule, as we now have it, by which the motion is decided before the defendant opens his case, but, on a review of its denial, the defendant's testimony will be considered if it supports the ruling against him. *Perth Amboy Manufacturing Co.* v. *Condit*, 21 *N. J. L.* 659; *Voorhees* v. *Woodhull's Executors*, 33 *Id.* 482; *Delaware, Lackawanna and Western Railroad Co.* v. *Dailey*, 37 *Id.* 526.

The parallel motion in criminal cases has no such history, or *raison d'etre*, because the motion at the close of the state's case was not reviewable until made so by the one hundred and thirty-sixth section of the Criminal Procedure act. Moreover, the application of the civil rule to criminal trials is open to the criticism that by force of a ruling, that was wrong when made, testimony that the defendant ought not to have been required to give at all may be laid hold of to sustain the wrongful ruling by which he was required to give it. This comes perilously near compelling the accused to convict himself, since under the practice thus sanctioned the defendant's motion made when no case had been made against him may be denied, with the result that the defendant, at his peril, must either forego making any defence on the merits, or else make such defence at the risk of having isolated pieces of his

testimony used against him to cure an exercise of discretion, wrongful when made, which the legislature has given him the right to review, and which our courts have said was to be reviewed, "upon the evidence as it stood when the motion was made." We consider that a wrongful exercise of discretion having these results is a manifest wrong and injury to the defendant in the sense intended by the statute.

We therefore proceed to consider the question whether at the close of the case made by the state there was a case for the jury, without considering the facts developed in the defendant's case tending to cure, if they justify such inference, the absence of proof of defendant's guilt when the motion for a direction was made.

The case made by the state was that defendant solicited Pelouze & Campbell, a partnership, consisting of two persons conducting business under that name, to enter into a contract with the Jersey Railways Advertising Company for advertising the business of the firm in certain street railway cars, which resulted in an agreement to have the advertising cards of the firm placed in certain cars for the period of six months; that a printed agreement was furnished by the defendant with a space left blank in which to insert, before the printed word "months," the period agreed upon; that in this space the defendant inserted the figure "6," after which the firm signed the contract and delivered it to the defendant to forward to the advertising company for approval, without which the contract was not complete; that the contract was executed in duplicate, one copy to be returned to the firm, if approved, and the other retained by the advertising company; that one of the duplicates was returned to the firm duly approved, shortly after which they discovered that a cipher had been inserted after the figure "6," making the term read 60 months; that no protest was made against the alleged alteration until the advertising company demanded payment, about eight months after the alteration was discovered. There was no direct proof that defendant made the alteration, or that it was made in Camden county by anyone.

In our opinion, this testimony does not establish two important elements necessary to show defendant's guilt and overcome the presumption of innocence to which every one charged with a crime is entitled—*first,* that he altered the contract after its execution, or *second,* that if he did, it was done within the jurisdiction of the Camden County Quarter Sessions.

It is not claimed that defendant kept the contracts in his possession or delivered them after execution and alteration, but the contrary is the fact, for they were returned to the firm from the New York office without the intervention of the defendant, and if altered, may have been by some one other than defendant and without his knowledge. The difficulty of showing criminal guilt does not relieve the state from that obligation, and there is no presumption of guilt. There was no proof when the motion was made, from which an inference could be drawn that this defendant forged these contracts by altering their terms, or that it was done in Camden county.

The presumption is that he did what he agreed to do, and that was to forward both contracts to the home office for approval in the condition in which they were delivered to him, and that he did send them is not denied, but the state insists that the presumption is that the defendant made the alteration before sending them. This requires an assumption that the defendant committed a crime, without proof from which it can legitimately be inferred. The only proof was that the defendant received the contracts in one condition, and that they were returned to the firm by a third person in an altered form.

This is no proof of a criminal act by the defendant, either in Camden county or elsewhere. The alteration may have been made in Newark or New York City. The judgment of conviction is erroneous and should be reversed.

As this case will have to be re-tried we feel called upon to refer to a matter which occurred at the trial, the tendency of which was to deprive the defendant of the benefit of documentary proof presumably within the control of the state or

at least of the complaining witness. It appears that a few weeks prior to the making of the contract which it is alleged the defendant altered after its execution by changing its terms from six months to sixty months, the complaining witnesses had made at the solicitation of the defendant a contract for advertising on certain car lines; that the contract in question was drawn to take the place of the former contract by including the original car lines with another, the effect of which was to entitle the complaining witnesses to advertising in additional lines of cars. The defendant claims that the first contract was for sixty months and gave the state notice to produce that contract, of which the defendant had a duplicate.

It was very important for the defendant to have that contract produced, for, although he had a copy, it would be very persuasive evidence that the new contract for substantially the same subject-matter was sixty months, if the duplicate of the former contract was for the same period. And while the defendant had a copy, it would not be as conclusive on the question of the complaining witnesses' knowledge as the one that they had in their possession.

They admitted that there was such a contract but denied that it was for sixty months, and if in fact it was for sixty months it would have tended to discredit their testimony as to the term for which the disputed contract was drawn.

Neither the complaining witness or the state produced this contract, and the reasonable inference is that it was drawn for sixty months, as was the copy produced by the defendant. Defendant gave notice to the state to produce this duplicate and was manifestly surprised at its non-production.

We think that defendant was entitled to its production in aid of his defence if within the control of the state.

The judgment is reversed.