STATE v. COSTIN

(No. 1791; January 24, 1934; 28 Pac. (2d) 782)

464

For the appellant, there was a brief by *C. E. Melvin* of Green River and *H. S. Ridgely* of Cheyenne, and oral argument by *Mr. Ridgely*.

For the respondent, there was a brief by *Ray E. Lee*, Attorney General, *Oscar O. Natwick*, Deputy Attorney General and *William C. Snow*, Assistant Attorney General, and oral argument by *Mr. Natwick*.

BLUME, Justice.

The defendant James Costin and one Sam Mc-Court were jointly indicted in Sweetwater County, Wyoming, for larceny on November 6, 1930, of 32 coyote hides belonging to the State of Wyoming, of the value of $145.00. It appears that Sam McCourt was tried separately a number of months prior to the time of the trial of the defendant Costin, the latter being detained in the Federal penitentiary during McCourt's trial. McCourt was acquitted. What the evidence was in his case we do not know, nor is it material here. The defendant Costin was tried in March, 1932, and was convicted of grand larceny, and he has appealed from the judgment rendered pursuant to such conviction.

1. It is assigned as error that the evidence is not sufficient to sustain the verdict, no question, however, being raised as to the ownership of the property or the value thereof. Nor is it argued that the property was not in fact stolen, and the chief argument seems to be directed to the point whether the defendant Costin or Sam McCourt committed the larceny. The main points relied on by the state to sustain the verdict is the opportunity which Costin, the defendant, had in stealing the property and his recent possession thereof thereafter, together with the circumstances connected therewith. The coyote hides were kept in a granary on the Rasmussen ranch, some 45 miles south of Rock Springs in this state, placed there by one Leonard Holst, who worked for the state of Wyoming, under the direction of the Biological Survey, trapping coyotes. On the date of the larceny he had in the granary 32

hides, some cured, and some uncured, the latter being still on stretchers. In addition to these hides there were three which belonged to one Nelson Rigley; making 35 in all. The larceny is claimed to have been committed on the night of November 6th, 1930. The defendant Costin was on the Rasmussen ranch on November 5th, 1930, having been called there for the purpose of taking one Frank Mokler, who was working on the ranch, to town. While there, and in the evening of November 5th, 1930, the defendant was in the granary above mentioned, where the hides were kept. The occasion for going there was the fact that Mokler kept a can (said by counsel for appellant to have been a still), which he wanted to take along as he went to town. At that time there were also on the ranch one Lem H. Cooley, who managed the Rasmussen ranch, and two strangers, who came on horseback, ate supper at the ranch, and left next morning. Much was made in the oral argument of counsel for appellant of the presence of these two strangers on the ranch. But as far as we can see, the point is without significance. Cooley testified that they were men rounding up cattle; that they left on the morning of November 6th, 1930, and that he saw the hides in the granary after they had left. Furthermore, there was testimony indicating that the tracks of their horses were followed two days thereafter, and it was found that these tracks did not turn back to the ranch after the men had left. Nor does it appear that Sam McCourt, who also lived in town, had ever been on the ranch, or that Frank Mokler or Cooley were in any way connected with the larceny in question. Hence there is no doubt that these facts might be grounds for suspicion for those subsequently investigating the crime that the defendant Costin might have had something to do with

it, although we are in perfect accord with what was said in State v. Morris, 41 Wyo. 128, 283 Pac. 406, that an opportunity to cimmit a crime does not require a necessary inference that it was used. But there was much more shown in this case than the opportunity to commit the crime. It was discovered in the morning of the 7th of November, 1930, that the hides were gone. Tracks of two men were discovered, going to and from the granary, and to and from a place in the road where an automobile had turned about. The tracks of one of the men were shown to have been made by shoes, the tracks of the other man by a boot or boot-shoes, and it was further shown that McCourt usually wore the latter. Further, the undisputed and undenied testimony was that Costin and McCourt were in Green River during the early part of the evening of November 6th, 1930, and that they, though neither of them were engaged in any occupation, some time during that evening or night drove to Salt Lake City, Utah, in an automobile owned by the defendant Costin, with 35 coyote hides in the car. They arrived in Salt Lake City some time during the morning of November 7th, 1930, registered at the Wilson Hotel at 8:25 in the morning and both occupied room 202 of the hotel. Thereafter they drove to the store of R. C. Elliott & Co., dealers in hides, furs and wool, for the purpose of disposing of the hides. One A. M. Christensen was in the employ of R. C. Elliott & Co. at the time and bought the hides. According to his testimony, both Costin and McCourt came into the store; that he did his business with McCourt; but that, after he had offered the sum of $161.30 for the hides, McCourt went over a short distance to where Costin was and had a secret conference with him; that thereafter McCourt accepted the offer; that he, Christensen, then asked, in a

voice loud enough for both to hear, to whom he should make out the check for the hides, and that McCourt, in a similar voice, told him to make it out to one Sam Thompson, which he did. The check was offered in evidence, and was endorsed by one *Sam Tompson*. Thereafter Oren L. Robinson, who lived at Rock Springs, and was the superior of Leonard Holst, went to Salt Lake City, arriving there on the morning of November 12th, 1930. After a search in several fur houses, he discovered the fact that Costin and McCourt had sold 35 hides to R. C. Elliott and Company on November 7th. Because of the peculiar characteristics of the treatment of the hides, he picked out 15 of them, marked them for identification, brought them back with him, and they were used at the trial.

These are the main facts relied on by the State to sustain the conviction. That recent possession of stolen property is a material factor in determining the guilt or innocence of the defendant in a larceny case is agreed on by all the courts. 36 C. J. 867; Richey v. State, 28 Wyo. 117, 201 Pac. 154, 205 Pac. 304; Kinney v. State, 36 Wyo. 466, 256 Pac. 1040. In the latter case, the circumstances under which a conviction was upheld were no stronger than, if as strong as, those in the case at bar. It was argued at the trial, though nothing is said on the point in the appellant's brief, that recent possession of stolen property is of no importance, unless it is shown to have been exclusive. But, as said in 36 C. J. 872, "possession may be personal and exclusive, although it is in the joint possession of two or more persons, if they are shown to have acted in concert." And we think that the jury were warranted by the evidence shown in this case in finding that defendant Costin and McCourt so acted. It is generally held that if the possession is re-

cent, exclusive and unexplained, a conviction will be sustained, especially if corroborated by other evidence, such as opportunity to commit the crime, selling the property at a distant place and the like. 36 C. J. 875. In the case at bar, there was opportunity for the defendant to commit the crime; there is evidence in this case from which the jury might infer that he, in concert with McCourt, sold the property in Salt Lake City, more than 200 miles from the scene of the crime. The driving to Salt Lake City at night; the finding of the shoe and boot tracks; the fact that McCourt generally wore boot-shoes, and the association of the two men at Green River and in Salt Lake City, were circumstances to be considered herein. That is true also as to the check that was given for the hides by the purchaser and made out to Sam Thompson, the only reason for which, so far as we can discover in this case, could be to hide the crime. We are, accordingly, convinced that the evidence was ample to convict the defendant, unless the possession herein mentioned was so explained that the force of what we have said is removed.

The defendant, as stated, made the trip to Salt Lake City at night, although, as the evidence indicates, neither he nor Sam McCourt had any occupation. He attempted to explain that by testifying that his wife was very sick that day. But it is clear, if that was true, that she was still seriously sick at the time that he left. It is apparent from the record that he and McCourt probably left Green River late on the night of the 6th, and yet, defendant left his wife, seriously sick as is claimed, in bed almost immediately after supper around six or seven o'clock, to play cards. His driving at night was further attempted to be explained by claiming that he had a letter and phone-call from his attorney at

Salt Lake City to be there for some financial matters not later than November 7th, 1930. He did not show that he transacted any business with his attorney on November 7. He did not have the letter calling him to Salt Lake City, nor did he produce the attorney as a witness to substantiate his claim. He testified that he was not in the store, where the hides were sold, had no communication with McCourt as to the price, and knew nothing whatever as to the fact that the check was to be made out to Sam Thompson. He was contradicted in almost every material point in this connection by the witness Christensen, and the jury doubtless credited the latter and found the defendant's testimony false. With these and other facts shown in the record it is clear that the jury were not bound to accept his explanation of his possession of the goods or give credence to his testimony in other respects. We need not mention the testimony of his wife or of one Harvey, by whom some of the defendant's claims were sought to be corroborated. Their credibility was for the jury. We feel satisfied, on the whole record, that the verdict of the jury is sustained by ample testimony.

2. It is assigned as error that the court permitted the 15 coyote hides to be introduced in evidence as Exhibit No. 1, without stating the basis of the error. The introduction thereof was objected to "for the reason that this defendant Costin has not been sufficiently connected with them; that there is no exclusive possession shown in him, or an insufficient joint possession shown with McCourt to entitle them to be admitted." The only argument in the brief of appellant on this point is that they were improperly admitted in evidence because they "were not properly and sufficiently identified to be received in evidence against the appellant." In the

light of the objection and assignment of errors above stated, it is somewhat difficult to tell just what counsel mean by their argument. The record shows that the coyote hides were in full view of the jury, when the various witnesses identified the pelts as part of the property stolen. And in view of that fact there is grave doubt that the mere formal introduction of them in evidence was in any way prejudicial to the defendant. In any event, the term "identification of property," when used in a larceny case, refers, when not otherwise qualified, to the identification of property as that which was stolen, and that point, as shown above, was never raised, either at the time of the trial, or in the assignment of errors. Exhibits of property may be made for various purposes, for instance, to show ownership, (People v. Wing, 23 Cal. App. 50, 137 Pac. 47; People v. Foster, 288 Ill. 371, 123 N. E. 534; People v. Thomas, 221 Mich. 651, 192 N. W. 602), or to show the value thereof (State v. Bogris, 26 Idaho 587, 144 Pac. 789), or for either or both of the foregoing purposes and at the same time to identify the defendant as the one connected with the crime in question. In all of these cases the question is whether or not the property has been identified as the property stolen. We might add that we think that that was sufficiently done in the case at bar, and the exhibit was admissible at least for the purpose of aiding in showing ownership and value. And if the exhibit was properly introduced for one purpose, it may be used for all relevant purposes in the case, if it sheds any light thereon. State v. Bogris, supra. Whether or not it has aided in identifying the defendant as having been connected wth the crime, is a question independent of that whether or not the property has been identified as the property stolen. The latter question

was not, as already stated, raised at the trial or in the assignment of error, and hence must be disregarded by the court. As to whether or not an exhibit, such as is in question here, should be introduced in evidence before the connection of the defendant with the crime has been shown, we need not determine, since the point is not argued, although we might say that such connection had in fact been shown in the case at bar before the exhibit was offered and admitted.

Finding no prejudicial error, the judgment of the trial court must be affirmed, and it is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.