**Larry NEWELL, Appellant**
**(Defendant below),**

v.

**The STATE of Wyoming, Appellee**
**(Plaintiff below).**

**No. 4508.**

Supreme Court of Wyoming.

April 5, 1976.

Rehearing Denied May 24, 1976.

Wyatt R. Skaggs, Asst. Public Defender, Natrona County, Casper, signed the brief and appeared in oral argument on behalf of appellant.

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., and Donn J. McCall, Legal Intern, Cheyenne, signed the brief and Gerald A. Stack, Deputy Atty. Gen., and William T. Sullins, Deputy County Atty., Casper, appeared in oral argument on behalf of appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

The appellant-defendant was charged with the burglary of Roy's Town and Country Pharmacy, located in Casper, Wyoming. The defendant and the county attorney, with approval of the district judge, waived trial by jury. After bench trial, the defendant was found guilty and sentenced to serve a term in the Wyoming State Penitentiary.

The owner of the drug store testified as to the circumstances of the break-in during the night of June 24–25 that he discovered

the following morning and identified a handgun and holster missing from the store, along with a number of drugs. An officer from the Jackson, Wyoming police department testified as to his interview of the defendant on the morning of June 26 and search of the motor vehicle which defendant claimed as his. The vehicle had dealer license plates of different numbers on front and rear. The items stolen from the pharmacy were discovered in a pillowcase in the car trunk, except for the pistol and holster which were under the front seat.

Defendant chose to testify on his own behalf and claimed that he arrived in Casper, Wyoming, early on the afternoon of June 24. He testified that he stopped in a Gulf station and asked the attendant where he could buy some speed. He was told that he could buy it at the Wonder Bar. He then went to the Wonder Bar to find some drug peddlers from whom he could purchase speed. He claimed he met a girl at the bar, left with her about 6:00 p. m., went to Casper Mountain for a while and then returned to the Wonder Bar about 7:30 p. m. He could not recall the girl's name, first or last. He said that he noticed some guys that looked like possible drug dealers enter the bar around 11:30 p. m. He went over to talk to them around 12:30 a. m. regarding the purchase of speed and was advised they had some to sell. The defendant further testified that he stayed until the bar closed about 1:00 a. m. and was very intoxicated when he left with the purported peddlers.

The defendant's testimony went on further to explain that when they reached a car in the parking lot three or four blocks away, one of the individuals opened the auto trunk and showed him the stolen items. The alleged dealers picked out five or six bottles which they supposedly thought contained benzedrine and dexedrine. The dealers, according to the defendant, had difficulty picking out what he wanted, so he offered to buy the entire lot. The asking price was $150.00 but the defendant ended up beating them down to $80.00 for the entire contents, including the pistol and holster. No names of the sellers were mentioned in the drug deal and defendant asserts he was unaware that the drugs were stolen. Only a fuzzy description of the three alleged peddlers was given by the defendant. He could recall no useful information that would lead to their identity. He also explained that he was primarily interested in purchasing the benzedrine and the dexedrine and he was not interested in the other drugs. He wanted the pistol included in the deal so that he could sell it to cover the cost of the drugs. He testified that he used the benzedrine and dexedrine before he was apprehended. The druggist testified that the benzedrine is commonly known as speed, a prescription drug used in the treatment of obesity and retarded children.

The defendant testified he returned to his motel, took the drugs into his room and slept until 3:30 or 4:00 a. m. the same morning. He then put the drugs in a pillowcase taken from his motel room, placed it in the trunk of what he called his car and drove to Cody, through Yellowstone Park and into Jackson. He spent the night of June 25–26 in Jackson and was planning to leave in the morning, when he was contacted by the officer of the Jackson police department.

During the course of its cross-examination, the State queried the defendant as to where he had obtained the automobile. Defendant's counsel objected. During argument to the court, the State indicated it was prepared to offer testimony that the car was stolen and registered to a Nebraska resident, not the defendant. The county attorney made it clear to the court that the purpose of offering this testimony at an appropriate time was to test the appellant's credibility, if the defendant on questioning claimed the vehicle as his own, which he had repeatedly stated to others and during his testimony. Defense counsel's objection to that line of interrogation was on the ground that it would involve an inquiry

into irrelevant misconduct on the part of the appellant and violate his right to remain silent with respect to a collateral matter. However, after the objection was overruled on the ground it was asked only to test credibility, without hesitation, the defendant testified that, "I stole it," and proceeded to identify from whom and where it was stolen in Nebraska. The credibility testing therefore never came into play.

As presented by the defendant, the issues are claimed to be:

1. Whether the court erred by allowing the evidence of prior criminal misconduct of the defendant?

2. Whether the verdict is against the weight of the evidence?

3. Did the court err by not granting a judgment of acquittal at the close of the State's direct evidence?

The problem of the first issue was telegraphed early by the filing of a pretrial motion in limine by the defendant, asking for an order of the court to prevent any testimony relating to the fact that defendant allegedly had in his possession a stolen motor vehicle and cross-examination of the defendant by the State in that regard. The grounds with respect to cross-examination were that it "would force defendant to incriminate himself" and "would be inflammatory, prejudicial, irrelevant and distract the jury from its purpose." The motion was never ruled on. This revealed to the trial court, in anticipating a jury trial, that the motor vehicle was probably stolen or in any event there were incriminating circumstances surrounding defendant's possession. We gather from remarks of the court that if the trial had taken the course of being before a jury, the trial judge, while himself possessed of knowledge amounting to an admission that the car was stolen or raising that suspicion, would have kept that information from the jury.

The same line was followed at the time the defendant objected to the county attorney's question, "Where did you get this car?" During the argument, defendant's counsel stated that, "this line of questioning * * * would necessarily, possibly force the Defendant to incriminate himself," in a Nebraska trial involving the vehicle. Should it be any different that the case is court-tried? Can the trial judge disregard that information and be uninfluenced in the factfinding process which he, as the factfinder, must undertake?

The trial judge recognized the problem and dangers when, following argument, he made the observations following:

"Now, as far as the first objection of prior offenses and that sort of thing is concerned, I think I am quite familiar with not only the *Garrison [Gabrielson]* Case but with that whole principal [sic] and have honored it many times. I think it goes essentially to jury trials and their conduct and the concept that while such things may be rather highly relevant, never the less [sic] Courts have come to the conclusion that they cannot adequately trust a jury to separate that out and refrain from finding somebody guilty in the instant case because they were bad people in other cases. I think that is not a reason that is cogent in this non-jury case." (Bracketed material added.)

Without trying to deal with all its exceptions, it can be said that, ordinarily, evidence of prior misconduct of the accused is inadmissible in a criminal proceeding. *Dorador v. State*, Wyo.1974, 520 P. 2d 230, and *Gabrielson v. State*, Wyo.1973, 510 P.2d 534. (The full title of this latter case reveals that Gabrielson was also known as Garrison and explains the trial court's frequent reference to the "Garrison case.") We consider it a risky practice in a trial before a jury to permit the sort of inquiry that was here made and this was recognized by the trial court. As said in *Rosencrance v. State*, 1925, 33 Wyo. 360, 366, 239 P. 952, 953:

" 'It is a dangerous species of evidence, not only because it requires a defendant to meet and explain other acts than those

charged against him and for which he is on trial, but also because it may lead the jury to violate the great principle that a party is not to be convicted of one crime by proof that he is guilty of another.' "

See the introduction to *Jerskey v. State*, Wyo.1976, 546 P.2d 173, for a general discussion of the right to silence, protected by the Fifth Amendment to the Constitution of the United States.

The motive of the State in its desire to test the credibility of the defendant is questionable. Even though the court allowed it, impeachment was aborted by the defendant's admission that the car was stolen; the whole procedure was a practice in futility. The motion in limine and the objection made was an admission of or created a strong suspicion of guilt. These are made in the usual course of a criminal jury trial outside the hearing of the jury. It is impossible, however, to make objections of this sort outside the hearing of the factfinder in a trial before the judge. An objection claiming incrimination under the Fifth Amendment to the Constitution of the United States, in itself, as a practical matter, probably carries with it as much or more onus than an answer to the question, when made by any witness, including a defendant, sworn to "tell the truth, the whole truth and nothing but the truth."

Thus, the only real question here is whether the answer compelled of the defendant was prejudicial to him, in that we must conclude that technically the evidence was improperly received. The answer is found in the controlling case of *Galbraith v. State*, Wyo.1972, 503 P.2d 1192, 1194, where in a bench-tried case it was held that there is a presumption on appeal that the trial court disregarded improperly admitted evidence unless the record affirmatively shows the trial court's decision was influenced by such evidence. This court there cited *Birmingham v. State*, 1938, 228 Wis. 448, 279 N.W. 15, 17, 116 A.L.R. 554, as particularly persuasive on the proposition that even though an appellate court views certain evidence of other offenses as

having been improperly received and inadmissible, and would have been grounds for reversal if it had been a jury trial, nevertheless a conviction will be affirmed if prejudice is not shown.

We would add *State v. O'Neal*, 1969, 204 Kan. 226, 461 P.2d 801, 804, where there was a question as to the admissibility of prior convictions under a Kansas statute, where remoteness can create irrelevance, the court said:

"In our case the trial was before the judge. When there is no jury to be misled by the evidence there is a strong presumption on appeal that the trained mind of the trial judge was not led astray by such evidence and that proper limitations on weight and probative force were applied. * * *"

In the case before us, the trial judge made the same observation and dispelled any idea that the evidence of another offense would affect him in any way. There is no indication in this case that the finding would have been different if there had been no admission of improper evidence. We have examined the record carefully and believe defendant wholly fails to demonstrate that the trial court was in any manner influenced by the defendant's admission of irrelevant acts of misconduct. There is certainly sufficient evidence from which the judge, as the trier of the facts, could well have determined the guilt of the defendant. There was no more than harmless error. Rule 49(a), W.R.Cr.P. There was not prejudice per se.

The examination of the defendant's next claim of error that the verdict is against the weight of the evidence is coupled to our review of the previous issue. Disregarding the improperly received evidence, is there still enough remaining to justify the trial court's verdict of guilty? In conducting our review of the evidence, we condition ourselves with well-settled precepts of appellate practice. We must "view the evidence in the light most favorable to the prosecution and determine ques-

tions of law as to whether there is substantial evidence, direct or circumstantial, or both, which, with the reasonable inferences that may be drawn therefrom, will sustain the verdict." *Harris v. State,* Wyo.1971, 487 P.2d 800, 801. 8 Moore's Federal Practice—Criminal Rules, 2d Ed., § 23.05, p. 23–14, sums up the process of review in judge-tried criminal cases:

"The scope of review of a judicial determination of guilt does not differ from the scope of review of a jury verdict. On appeal the court takes the view of the evidence most favorable to the government, and affirms if there is substantial evidence of guilt. This standard also applies to appellate review of specific findings of fact by the trial court. * * *"

Circumstantial evidence is entitled to the same weight as direct evidence. *Blakely v. State,* Wyo.1975, 542 P.2d 857.

The court in this case returned only a general finding of guilt, pursuant to Rule 24(b), W.R.Cr.P.:

"In a case tried without a jury the court shall make a general finding and shall in addition on request find the facts specially. If an opinion or memorandum of decision is filed, it will be sufficient that the findings of fact appear therein."

There was no request to find the facts specially nor was an opinion or memorandum filed to explain the reasons for the finding of guilt. We take particular note, however, of the court's comment, appearing in the transcript, when he announced his finding, that the defendant's testimony was not believable and the State proved its case beyond a reasonable doubt.

■ It was up to the court, as the trier of fact, to determine the weight to be given to all the evidence. *Booth v. State,* Wyo.1974, 517 P.2d 1034, 1037. The trier of the fact is the judge of the weight to be given to the evidence. *Belondon v. City of Casper,* Wyo.1969, 456 P.2d 238, 240, cert. den. 398 U.S. 927, 90 S.Ct. 1815, 26 L.Ed. 2d 89, a judge-tried case.

■ The elements of the crime were all established to prove a violation of § 6–129(A), W.S.1957:

"Whoever, intentionally enters, or attempts to enter, any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony therein may be imprisoned not more than fourteen (14) years:

"(1) Any building or dwelling; or

"* * *"

There was an intentional entry as shown by the testimony of the druggist that a window was broken to gain access. He testified he gave no consent for such an intrusion. The intent to steal is evidenced by the removal of a handgun and various drugs belonging to another and the disarray left by the thief. The entry was made outside regular business hours therefore precluding the application of subsection (C) of the cited statute declaring, "For the purpose of the section, entry into a place during the time when it is open to the general public is with consent." It, of course, goes without saying that the drugstore was a building.

■ The only question is the identity of the felon. The most significant and material evidence of defendant's guilt is his possession of the stolen property. Possession is a strong circumstance tending to show guilt and only slight corroborative evidence of other inculpatory circumstances is required. *Orcutt v. State,* Wyo. 1961, 366 P.2d 690, 692–3. While it may be otherwise elsewhere, in this jurisdiction, possession alone is insufficient in itself to convict. *Orcutt, supra; State v. Costin,* 1934, 46 Wyo. 463, 469, 28 P.2d 782, 783.

■ As is so often the case, when the defendant elected to take the stand, the State's case was fleshed out and fattened by his testimony, established the opportunity to commit the crime in that it placed him in Casper and out on the streets late at night and early in the morning on the date of the burglary. It explained his de-

sire for hallucinogenic drugs: motive. It showed his plan to escape and take flight by an unexplained departure from Casper at 3:30–4:00 o'clock in the morning. He gave no reason. Two and one-half to three hours of sleep after the frolic he claims he was on does not appear to reasonably meet the needs of an abused body unless to escape from detection and apprehension, which can become to the lawless a pressing need superior to other considerations. Opportunity is corroboration. *State v. Costin, supra.* Flight is corroboration. *Delmont v. State,* 1907, 15 Wyo. 271, 88 P. 623, reh. den. 88 P. 1102. While not of themselves corroboration, exclusive and recent possession following a burglary is an important circumstance. *State v. Costin, supra.* The burglary took place within the preceding 48 hours. The defendant's whole improbable and unsatisfactory explanation of possession is corroboration and whether he made a satisfactory explanation was for the trial court. *State v. Thomas,* 1952, 121 Utah 639, 244 P.2d 653. It lacks the ring of truth and was set out in all its detail in this opinion because its telling explains its unlikelihood.

■ Possession plus an explanation which the jury could find to be false is corroboration. *State v. Hunter,* 1967, 102 Ariz. 472, 433 P.2d 22; *State v. Solano,* 1967, 181 Neb. 716, 150 N.W.2d 585; *People v. Carswell,* 1957, 149 Cal.App.2d 395, 308 P.2d 852. It is a factfinder's question whether explanation raises a doubt. *People v. Bueno,* Colo.1975, 534 P.2d 1196, 1198; *Franklin v. State,* Tex.Cr.App.1970, 457 S.W.2d 53. The trier of fact is not required to believe the defendant's explanation of possession. *Callahan v. State,* Tex.Cr.App.1973, 502 S.W.2d 3; *Hubble v. State,* 1973, 260 Ind. 655, 299 N.E.2d 612; *State v. Clark,* Mo.1969, 438 S.W.2d 277; *Costin v. State, supra.* The cases cited in this paragraph were jury-tried. The weakness or falsity of the defendant's explanation can be considered as supportive of guilt, when hitched to exclusive possession. *State v. Johnson,* 1960, 11 Wis.2d 130, 104 N.W.2d 379, 384. "Factfinder" has to be substituted for the term "jury" because in cases tried by a judge alone, the court acts in a jury role. The trial court found the explanation unbelievable.

■ Hand in hand with the discussion of evidence sufficiency goes a consideration of the defendant's last claim of error that the court should have granted his motion for acquittal at the close of the State's evidence. It can be stated as an accepted principle that, even if the evidence at the close of the State's case is not sufficient to warrant a conviction, when a defendant proceeds after denial of his motion, his guilt or innocence will be determined by the evidence as a whole. *Neel v. State,* Wyo.1969, 452 P.2d 203, reh. den. 454 P.2d 241.

We find no prejudicial error.

Affirmed.

ROSE, Justice (dissenting).

## PRIOR MISCONDUCT AND TESTING CREDIBILITY

The defendant, on trial for robbery before a judge, took the stand in his own defense, at which time, on cross-examination, he was asked how he came into possession of the car in which the stolen goods were found. Objection was made on the ground that it would involve inquiry into irrelevant prior misconduct. The objection was overruled when the state's attorney explained that the inquiry was being made for the purpose of *testing credibility,* whereupon the defendant answered, "I stole it." At this time the stolen car was not the subject of any criminal charges. When the question was asked, neither the defendant's character nor his proclivity for truth-telling—or lack of it—were in issue.

The court, in permitting the inquiry, held that *credibility is "really the heart of this matter,"* and said:

"Now, as far as the first objection of prior offenses and that sort of thing is concerned, I think I am quite familiar

with not only the *Garrison* [*Gabrielson*] Case but with that whole principal [sic] and have honored it many times. I think it goes essentially to jury trials and their conduct and the concept that while such things may be rather highly relevant, never the less [sic], Courts have come to the conclusion they cannot adequately trust a jury to separate that out and refrain from finding somebody guilty in the instant case because they were bad people in other cases. I think that is not a reason that is cogent in this non-jury case." [Bracketed matter supplied]

As I understand the rule (excepting with respect to felony convictions), in Wyoming, and generally, credibility cannot be tested through examination into past misconduct unless the defendant's propensities regarding truth-telling are in issue.

Rule 608(b), Federal Rules of Evidence, enunciates the legal principle and the prevailing rule:

"Specific instances of conduct. *Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence.* They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." [Emphasis supplied]

We have held that only felony convictions are a proper subject of past misconduct examination for the purpose of testing credibility. *State v. Hines,* 79 Wyo. 65, 81, 331 P.2d 605, 611. This kind of credibility inquiry may be made only for impeachment purposes and then only under the watchful eye of the court's discretion. The reason for caution is, as the majority quotes us as having previously said in *Rosencrance v. State,* 33 Wyo. 360, 239 P. 952, 953,

" 'It is a dangerous species of evidence, not only because it requires a defendant to meet and explain other acts than those charged against him and for which he is on trial, but also because it may lead the jury to violate the great principle, that a party is not to be convicted of one crime by proof that he is guilty of another.' "

While past misconduct may be inquired into for *other* purposes, such as identity, guilty knowledge, intent and motive,[1] examination to test *credibility* does not fall within this class of permissible subjects for examination.

I would, therefore, conclude that it was improper for the trial court to have allowed the question about how the defendant came by the automobile and to have received the testimony for the purpose of attacking his credibility.

The majority seem to agree with me up to this point, as indicated by the author's review of authority capped by a conclusion in which he says:

"The motive of the State in its desire to test the credibility of the defendant is questionable . . ."

and in which *Gabrielson* and *Dorador* are quoted as standing for the proposition that ordinarily

" . . . evidence of prior misconduct of the accused is inadmissible in a criminal proceeding . . ."

Remembering that the trial judge has said he has admitted the testimony about possession of the car for purpose of testing credibility, which he considers to be *"really the heart of this matter,"* [Emphasis supplied] and remembering that he believes that the only reason for excluding such testimony is that juries cannot sort out the wheat from the chaff—but judges can—the

---

1. *Gabrielson v. State,* Wyo., 502 P.2d 1191; *Valerio v. State,* Wyo., 429 P.2d 317; *Dorador v. State,* Wyo., 520 P.2d 230.

majority opinion concludes that it was not prejudicial to elicit the information that the vehicle was stolen. The opinion states:

> "*Thus, the only real question here is whether the answer compelled of the defendant was prejudicial to him, in that we must conclude that technically the evidence was improperly received. The answer is found in the controlling case of Galbraith v. State, Wyo.1972, 503 P. 2d 1192, 1194, where in a bench-tried case it was held that there is a presumption on appeal that the trial court disregarded improperly admitted evidence unless the record affirmatively shows the trial court's decision was influenced by such evidence.* This court there cited *Birmingham v. State,* 1938, 228 Wis. 448, 279 N.W. 15, 17, 116 A.L.R. 554, as particularly persuasive on the proposition that even though an appellate court views certain evidence of other offenses as having been improperly received and inadmissible, and would have been grounds for reversal if it had been a jury trial, nevertheless a conviction will be affirmed if prejudice is not shown." [Emphasis supplied]

I must say that I am unable to see what difference it makes whether it is a jury trial or a court trial if, under these facts, credibility may not be tested by prior misconduct. The court, *as a fact-finder, has agreed to admit and consider the evidence for a prohibited purpose—i. e., the testing of credibility.*

According to *Galbraith v. State,* Wyo., 503 P.2d 1192, 1194, there is a presumption on appeal that

> "the trial court disregarded improperly admitted evidence"

unless the record

> "affirmatively shows the trial court's decision was influenced by such evidence, *X v. Y,* Wyo., 482 P.2d 688, 691; *Russell v. Curran,* 66 Wyo. 173, 206 P.2d 1159, 1167; *Yount v. Strickland,* 17 Wyo. 526, 101 P. 942, 944."

I read the *Galbraith* case to support my theory here—while the majority cites it to support theirs. I say this about *Galbraith*:

If, in a non-jury case, testimony of prior misconduct is improperly allowed into the evidence and the judge either expresses no opinion or recognizes it as improper and agrees to disregard it— then I have no quarrel with either the presumption that he would disregard the testimony or his ability and willingness to do it in the decision-making process. I would—as did *Galbraith*—apply strictly the presumption that the evidence would be disregarded, and I would apply the rule of *Galbraith* which holds that, in order to overcome the presumption, there must be an affirmative record showing that the trial court's decision was influenced by such evidence.

But—that is not this case. Here we do not have the opportunity to apply the presumption to the effect that the court has disregarded the complained-of testimony. The judge *said he did not disregard it—he said he was going to consider it for the purpose of testing credibility*—a forbidden consideration. This admission, to me at least, affirmatively shows that the trial court's decision was influenced by such evidence. He announced his belief that it was acceptable for testing credibility—he allowed it for that purpose—and considered it for that purpose. Can we then say, as the majority does, that the presumption of *Galbraith*, nonetheless, operates to lead us to a conclusion that the trial court "disregarded improperly admitted evidence"? Based upon the trial judge's admission, I would hold that the *Galbraith* presumption cannot operate to correct the court's error under these conditions.

But, it is argued, since the question was permitted only to test credibility and, even though the answer ("I stole it.") comes into evidence for a prohibited reason—as the poisoned fruit of the evil inquiry, nevertheless, the defendant having passed his credibility test, there will, therefore, be no resultant prejudicial infection in the mind of a judge who seeks to discover whether or not the defendant is a thief. The framing of the proposition seems to compose the answer to the question of whether or

not the introduction of the evidence was prejudicial. For me, it reeks of prejudice. It is like saying that the judge, who happened to be walking along in front of Bank A when the robber ran out with a sack of money, wouldn't be influenced on the question of whether the robber had bank-robbing propensities at a trial where he is charged with robbing Bank B.

I would reverse and hold that the presumption of *Galbraith* is *not* operative in the face of a judge's admission that the evidence was permitted for a prohibited reason.

I would hold that the record affirmatively reflects prejudice in the form of a wrongful admission of evidence of other larceny for the reason that such diseased proof established the defendant, in the mind of the judge, as a thief in a case where the issue is thievery.

## OTHER GROUNDS FOR DISSENT

I take further issue with these following statements of the majority opinion. First, the majority says:

" . . . The motion in limine and the objection made was an admission of or created a strong suspicion of guilt . . ."

Secondly:

" . . . An objection claiming incrimination under the Fifth Amendment to the Constitution of the United States, in itself, probably carries with it as much or more onus than an answer to the question, when made by any witness, including a defendant, sworn to 'tell the truth, the whole truth and nothing but the truth.' "

### *Motion in Limine*

The motion in limine was made requesting an order of the court—as the majority opinion says—

2. The Fifth Amendment to the United States Constitution provides, in relevant part: "No person shall be . . . compelled in any criminal case to be a witness against

" . . . *to prevent any testimony relating to the fact that defendant allegedly had in his possession a stolen motor vehicle and cross-examination of the defendant by the State in that regard* . . ." [Emphasis supplied]

The majority court then later says:

" . . . *it can be said that, ordinarily, evidence of prior misconduct of the accused is inadmissible in a criminal proceeding. Dorador v. State,* Wyo.1974, 520 P.2d 230, and *Gabrielson v. State,* Wyo.1973, 510 P.2d 534 . . ." [Emphasis supplied]

Is the conclusion then to be drawn that when a defendant makes a motion in limine to exclude admittedly inadmissible evidence it creates a

"strong suspicion of guilt . . ."?

I would prefer to believe that a properly-made motion to exclude evidence would not carry with it suspicion of either *guilt or innocence*—especially in the mind of a trial judge. It would seem that this would be more particularly true in an appeal in which the appellate court urges that the evidence which the defendant sought to have excluded was improper and should not have been either introduced by the state or received by the court. We tell juries that they should disregard motions and their rulings—why, then, should the making of a motion in limine be

" . . . an admission of or create[d] a strong suspicion of guilt . . ."

in the mind of a trial judge?

I hope that this is not the way it is.

### *The Fifth Amendment*

I also hope it is not true that the invocation of constitutional rights, such as provided for in the Fifth Amendment to the United States Constitution [2], imposes such

himself, nor be deprived of life, liberty, or property, without due process of law; . . ."

an "onus" [3] as to cause he who asserts his rights against self-incrimination to be unfavorably compared with a defendant

> " . . . sworn to 'tell the truth, the whole truth and nothing but the truth' . . . "

who chooses to answer a question which might incriminate him.

Surely, we in this court do not embrace a doctrine which stigmatizes the defendant who would exercise his right to remain silent under the protection of the Fifth Amendment to the Federal Constitution. We have held that he may not be so penalized. *Jerskey v. State,* Wyo., 546 P.2d 173, 183.

Finding prejudicial error on the issue of admitting the stolen car testimony into evidence for the purpose of testing the defendant's credibility, I would reverse and remand for a new trial.

. McCLINTOCK, Justice, concurring in the dissent of ROSE, J.

I concur in the dissent of my Brother Rose and would add only this brief comment. The majority concede that possession of stolen property is alone insufficient to convict but accept it as a strong circumstance tending to show guilt and requiring only slight corroborative evidence of other inculpatory circumstances. Those other circumstances are found in the testimony of the defendant himself who, after his motion for acquittal made at the close of the State's case had been denied (a decision which as I view it the majority opinion inferentially condemns as erroneous), elected to take the stand and attempt an explanation of his possession of the stolen property. All testimony of an inculpatory nature, that is, that he was in Casper, that he was looking for hallucinogenic drugs, that he left Casper suddenly and at a strange hour (in other words, evidence showing opportunity, motive, and flight) is accepted as corroborative. Testimony of an exculpatory nature, that is, relating to the circumstances under which he claimed to have obtained the stolen goods, is rejected as a "whole improbable and unsatisfactory explanation of possession" and this unsatisfactory explanation "is corroboration and whether he made a satisfactory explanation was for the trial court."

I confess a feeling of disquietude that the conviction here should rest upon testimony of the defendant so that except for his having taken the stand the State would not have proved the necessary elements of the crime with which defendant was charged.[1] I also find it anomalous that defendant is to be believed in those matters which are inculpatory and his story rejected as to those matters which were exculpatory. The point of this dissent, however, is that since the essentiality of his testimony is admitted, and since the trial judge himself has said that his credibility goes to the heart of the matter, how can we presume that the trial judge disregarded the question and answer which he improperly admitted? Where the testimony of the defendant was the *sine qua non* of the conviction it seems much too dangerous to me to assume that the trial judge was uninfluenced by this procedure.

I would also expressly disclaim as a declaration of this court the two remarks with respect to the motion in limine and invocation of the Fifth Amendment.

3. A synonym for "onus" is "stigma." Webster's Seventh Collegiate Dictionary.

1. I am troubled by the rule announced by this court in *Neel v. State,* Wyo., 452 P.2d 203, 204 (1969) that error in denying a motion for acquittal made at the close of the State's case is waived by presentation of evidence by the defense which, as said by the majority, "fleshed out and fattened" the State's case.

See *State v. Bacheller,* 89 N.J.L. 433, 98 A. 829 (1916) ; *Cephus v. United States,* 117 U.S.App.D.C. 15, 324 F.2d 893 (1963) ; 2 Wright's Federal Practice and Procedure, Criminal, § 463, p. 247 ; and Comment, The Motion for Acquittal: A Neglected Safeguard, 1961, 70 Yale L.J. 1151. However, this does seem to be the majority rule and I am disinclined to tilt at windmills in this dissent.