**Steven J. COWELL, aka Steven J. Herman, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 85–224.

Supreme Court of Wyoming.

May 15, 1986.

Leonard Munker, State Public Defender; Julie Naylor, Appellate Counsel; Gerald M. Gallivan, Director, Wyoming Defender Aid Program; Robert T. McCue, Student Intern, Wyoming Defender Aid Program; Jamie J. Swenson, Student Intern, Wyoming Defender Aid Program, for appellant.

A.G. McClintock, Atty. Gen.; Gerald A. Stack, Deputy Atty. Gen.; John W. Renneisen, Senior Asst. Atty. Gen.; Allen C. Johnson, Senior Asst. Atty. Gen., for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

On June 5, 1985, Steven J. Cowell was convicted by a jury of burglary (a felony) under § 6–3–301, W.S.1977, Cum.Supp. 1985, and unauthorized use of a vehicle (joyriding, a misdemeanor) under § 31–11–102, W.S.1977, Cum.Supp.1985. On appeal, he contends that insufficient evidence was presented to convict him of burglary. We hold to the contrary, and affirm the conviction. No appeal was taken from the joyriding conviction.

In addition to the sufficiency-of-the-evidence issue, appellant also questions whether the elements of burglary can be inferred from the mere possession of stolen goods.

The State contends that the evidence is sufficient to support the jury's finding of guilt and no stacking of inferences or inferences and presumptions were necessary for that conclusion.

The events which led to his arrest, trial and conviction began at Boot Hill, a night club in Gillette, Wyoming. At about 12:30 a.m., on February 10, 1985, Barry Davis, an employee, went to the parking lot to start his car, and then back inside to visit with co-workers while the car warmed up. When he returned to the parking lot to leave, the car was gone, and a police report was immediately made.

Five days later, Highway Patrolman James Lowry stopped at a rest area off the northbound lane of I–25, north of Wheatland, some 160 miles south of Gillette, and observed appellant sleeping in a parked car. Suspecting that the occupant was passed out or possibly under the influence of alcohol, the officer ran a National Crime Computer check, using the license plate number. A police radio dispatcher informed the officer that the vehicle was stolen. Appellant was then arrested, and Barry Davis was notified to retrieve his car in Wheatland. Davis found cardboard boxes in the car, filled with items which did not belong to him and which were not in the car when it was stolen. Upon return to Gillette, Davis delivered the boxes and their contents (clothing, personal items, jewelry, and personal checks) to law enforcement personnel. A Campbell County Sheriff Department's officer determined that the checks belonged to Yvonne and Wiley Ferguson, a couple who had recently reported a burglary at their residence.

Yvonne Ferguson identified her belongings among the recovered items. She explained that she did not notice that anything was missing from her home until February 14, but that the only opportunity for someone to enter her home unnoticed

was on February 9 or 10, when she left her house unlocked during the day. It was early in the morning of February 10 that Barry Davis' car had been stolen.

Some of the recovered checks were still blank, but others had been completed to be payable to the order of Steven J. Cowell, and signed with the name of Wiley Ferguson. Mrs. Ferguson testified at trial that it was not her husband's signature. One of the forged checks had already been cashed on February 11, 1985, drawn on the Ferguson's account at First Bank of South Dakota at Sturgis. The bank teller who cashed the check specifically identified appellant as the man who presented the check to her and who used a copy of his birth certificate for identification. The bank later determined by comparison with the account signature card that the signature on the check was indeed forged.

Appellant, in defense, testified at trial that a man named Curt Dunne offered to let him borrow the car to travel to Denver to visit friends, and that on the return trip from Denver he was arrested at the rest stop near Wheatland. Appellant also denied that he had cashed the check in Sturgis, South Dakota, despite the use of his birth certificate for identification and actual trial identification by the bank clerk.

The jury found appellant guilty of burglary and unauthorized use of an automobile. His motion for a new trial for burglary was denied, and he was sentenced to not less than three nor more than six years in the penitentiary, plus a fine of $1,000 on the felony charge and a concurrent sentence on the misdemeanor which may be served before this appeal is completed.

### Sufficiency of the Evidence

Appellant cites the burglary statute under which he was charged:

"Burglary; aggravated burglary; penalties.

"(a) A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit larceny or a felony therein.

"(b) Except as provided in subsection (c) of this section, burglary is a felony punishable by imprisonment for not more than ten (10) years, a fine of more than ten thousand dollars ($10,000.00), or both." Section 6–3–301, W.S.1977, Cum. Supp.1985.[1]

Appellant asserts that there was no sufficient evidence to sustain the conviction that he either entered the Ferguson home or intended to commit a felony therein.

We must decide whether the jury received sufficient evidence to justify its verdict. As always, when sufficiency of the evidence is challenged, we conduct our review and examine the evidence in the light most favorable to the State. *Smith v. State*, Wyo., 564 P.2d 1194 (1977).

*Downs v. State*, Wyo., 581 P.2d 610 (1978), and *Newell v. State*, Wyo., 548 P.2d 8 (1976), guide our disposition of this case. In *Downs*, a grain elevator owner reported tools missing shortly after a local resident reported to police that appellant was at her house trying to sell her some tools. Appellant was located at the railroad yards, in possession of one of the stolen tools. The other stolen tools were returned by a brakeman who had purchased them from appellant. Downs was convicted of burglary, and appealed that the jury's finding of guilt was based solely on appellant's possession of stolen goods, and that there was no evidence placing him at the scene of the crime. The court cited *Blakely v. State*, Wyo., 542 P.2d 857 (1975), to explain that circumstantial evidence is to be measured on the same basis as direct evidence. In analyzing proof of the elements of burglary in Downs, the court said:

" * * * There can be no question but what the Greybull Elevator was intentionally entered without the consent of the person in lawful possession by some-

---

1. The 1985 amendment to § 6–3–301, effective May 23, 1985, substituted $10,000 fine for $14,000 in subsection (b). The elements of burglary were not changed, nor were other substantive amendments made.

one with the intent to steal. The entry is established by the presence of the tools at closing time and their absence when the building was reopened the next morning, not more than 14 hours later. Any reasonable mind must conclude that in order to effect removal of the tools, entry was necessary. The larceny could not have been committed without a felonious entry. The phenomena of rubbing Aladdin's lamp or levitation have not gained general acceptance as a shortcut. Since the tools were not taken by the owner nor by one with his permission, the element of stealing was present. The tools in the possession of the defendant were proved to be the same tools as those stolen from the building entered." 581 P.2d at 615.

Applying the *Downs* rationale to the case at bar, the entry to the Ferguson home is established by the presence in the stolen car of the checks, jewelry and personal items, followed by the discovery of their absence several days later. Appellant attempts to distinguish Downs on this point, claiming that there is no evidence of the date that an illegal entry occurred at the Ferguson home. Yet Yvonne Ferguson testified that on February 14 she discovered that several items were missing, and that the only opportunity for someone to enter through an unlocked door was the weekend of February 9 and 10. Her testimony, coupled with the disappearance of Barry Davis' car that same weekend, satisfies us that the jury could conclude beyond a reasonable doubt that an illegal entry occurred on that weekend. A jury's finding of fact should not be interfered with if there is any substantial evidence to support it. *Smith v. State*, supra, 564 P.2d at 1198; *Reilly v. State*, Wyo., 496 P.2d 899, reh. denied 498 P.2d 1236 (1972).

Also consistent with *Downs*, the Fergusons' possessions were not taken by them, nor did anyone have permission to use them, and Yvonne Ferguson identified the items stolen from her home as the same items that were found with the appellant in Barry Davis' stolen car.

Additional corroboration in this case comes through the testimony of the Sturgis bank teller who identified appellant as the man who cashed the forged check.

Another factor cited by the Downs majority as corroborative evidence was the opportunity of the defendant to commit the crime charged.

"* * * Evidence of opportunity to commit the crime is a link which considered with other incriminating facts may establish the guilt of the defendant. *Jones v. State*, Wyo.1977, 568 P.2d 837." 581 P.2d at 616.

In addition to having the opportunity to enter the Fergusons' unlocked home on February 9 or 10, appellant had a link to the Fergusons' home in particular. Yvonne Ferguson testified that appellant claimed to be the husband of Tammy Smith, who had lived (albeit with another man) in the same trailer court as the Fergusons, and who helped Yvonne Ferguson do cleaning work. Mrs. Ferguson also testified that appellant had visited with her husband, Wiley, on two occasions at a bar in inquiry about Tammy.

Finally, *Downs* also says that:

"Fabrication of a false, exculpatory statement for the sake of diverting inquiry or casting off suspicion is circumstantial evidence of guilt. *Bennett v. State*, Wyo.1963, 377 P.2d 634." 581 P.2d at 616.

Appellant Cowell testified that he did not go to Sturgis, South Dakota, to cash the checks, that he did not forge the checks, and that the bank teller was incorrect in identifying him. He did not explain how his name happened to appear on the checks or who could have presented his birth certificate as identification. Any jury could reasonably determine the statement was false, see *Mirich v. State*, Wyo., 593 P.2d 590 (1979), and consequently this court will not interfere with the jury judgment in such case unless its conclusion is inherently impossible or unreasonable. *Downs v. State*, supra; *People v. Heiple*, 29 Ill. App.3d 452, 330 N.E.2d 556 (1975).

The other case which guides our decision is *Newell v. State*, supra, also a burglary case, in which sufficiency of the evidence was an issue. Newell was found guilty of breaking into and stealing drugs and a gun from a Casper pharmacy. Newell testified that he obtained possession of the stolen goods by purchasing them from drug dealers whom he met in the Wonder Bar in Casper. In affirming his conviction, the *Newell* court said:

"Possession plus an explanation which the jury could find to be false is corroboration. [Citations.] It is a factfinder's question whether explanation raises a doubt. [Citations.] The trier of fact is not required to believe the defendant's explanation of possession. [Citations.] The cases cited in this paragraph were jury-tried. The weakness or falsity of the defendant's explanation can be considered as supportive of guilt, when hitched to exclusive possession. [Citations.]" 548 P.2d at 14.

In addition to denying that he had cashed the forged check in Sturgis, appellant testified that he borrowed the car from a Curt Dunne, whom he met at the Good Times Bar in Gillette, for a trip to Denver to visit friends. Appellant, on cross-examination, testified that he did not know where Dunne lived, and when asked how he could return the car if he did not know where Dunne lived, Cowell said that he was supposed to return it at the Good Times Bar. The jury chose not to believe appellant's explanation, which explanation at best was highly unlikely, particularly so since he did not also appeal the joyriding conviction. Dunne was not otherwise materialized as a real person by any trial evidence.

Appellant's credibility was further in question because of a criminal record revealed by cross-examination after his direct examination. He was on probation from a prior accessory-to-burglary conviction.

The other important factor in *Newell* was appellant's possession of the stolen goods:

" * * * The most significant and material evidence of defendant's guilt is his possession of the stolen property. Posses-

sion is a strong circumstance tending to show guilt and only slight corroborative evidence of other inculpatory circumstances is required. *Orcutt v. State*, Wyo.1961, 366 P.2d 690, 692–3. While it may be otherwise elsewhere, in this jurisdiction, possession alone is insufficient in itself to convict. *Orcutt*, supra; *State v. Costin*, 1934, 46 Wyo. 463, 469, 28 P.2d 782, 783." 548 P.2d at 13.

We find as additional corroboration that, upon apprehension, appellant possessed the stolen Davis car, the Fergusons' watches, jewelry, personal items, and personal checks, with several of the recovered checks made payable to him. Additionally, he had cashed one of the checks, and was positively identified by the bank teller in using his birth certificate as identification. This is determined to be more than the "slight corroborative evidence of other inculpatory circumstances" which is required by *Newell v. State*, supra, and *Orcutt v. State*, Wyo., 366 P.2d 690 (1961). See also *Leppek v. State*, Wyo., 636 P.2d 1117 (1981), and *Delmont v. State*, 15 Wyo. 271, 88 P. 623 (1906). This case is clearly distinguished from *State v. King*, Wyo., 718 P.2d 452 (1986), where corroborative factors were not found.

### Stacking of Inferences

Appellant contends that in finding him guilty of burglary the jury drew an impermissible chain of inferences from the sole fact that the Fergusons' stolen property was found in the car with appellant when he was arrested near Wheatland.

Introductory to a discussion of inferences in *Downs v. State*, supra, the court said:

"The defendant urges essentially that guilt cannot be based solely on circumstantial evidence because it means piling up inferences. We know of no such concept representing accepted jurisprudence with respect to circumstantial evidence. Circumstantial evidence is many times the only way that an ultimate fact may be shown. *Blakely v. State*, Wyo.1975, 542 P.2d 857, explains that circumstantial evidence has standing and stature and is to be measured upon the same basis as

direct evidence. It is a chain of proven circumstances indicating the guilt or innocence of the defendant.

"We see no proving of an inference from another inference in this case. There may be something offensive about basing an inference on an inference. It is an extremely technical as well as much criticized theory, Annotation, 5 A.L.R.3d 100, entitled, 'Modern status of the rules against basing an inference upon an inference or a presumption upon a presumption,' and has been noted in the jurisprudence of Wyoming but found inapplicable or of at least questionable application in those cases where mentioned. *Richey v. State*, 1921, 28 Wyo. 117, 201 P. 154, reh. denied 205 P. 304; *Rosencrance v. State*, 1925, 33 Wyo. 360, 239 P. 952. Be that as it may, we cannot see its applicability to this case, even if an accepted rule. In the case before us now, the circumstantial facts presented through direct evidence point to only one ultimate inferential fact—guilt. That is distinctively different from pyramiding inferences." 581 P.2d at 614–615.

Sequentially, the "chain of proven circumstances" referred to in *Newell* is also present here as a reasonable course of times and events. The Davis car disappeared on February 10; the Fergusons' forged check was cashed by appellant in South Dakota on February 11; Mrs. Ferguson reported that the only time her house was unlocked and susceptible to entry without force was on February 9 or 10; appellant was in Gillette that weekend; he knew who Wiley Ferguson was, and that his "wife" had worked with Mrs. Ferguson cleaning houses; and appellant was in possession of Davis' car and the Fergusons' property, including checks made payable to himself, when arrested. This series of events satisfies us that the jury could reasonably find appellant guilty of the burglary without basing that conclusion on inference upon inference. Cf. *State v. King*, supra. Adequate evidence for conviction clearly existed, sufficiently so to convince

the jury beyond a reasonable doubt. A jury has an obligation to listen, but is not required to believe everything that it hears. That composite knowledge of reason and realism is the strength of the jury system.

The conviction is affirmed.